Dorothy Ann **FLIPPO**, formerly Shannon, Counter–Appellant,

v.

Barlow J. **NELSON** and Yandell D. Shannon, as trustees, and Darlene Kay Gelino, Counter–Appellees.

No. 71417.

Court of Appeals of Oklahoma, Division No. 4.

May 8, 1990.

Lantz McClain, Sapulpa, for counter-appellant.

Pat Malloy, Malloy & Malloy, Inc., Tulsa, for counter-appellees.

BRIGHTMIRE, Chief Judge.

The issue presented for review in this partition action is whether the trial court's in kind allocation of subject land in accordance with the commissioners' final report was clearly unfair and inequitable as to the objecting plaintiff under the evidence.

We hold that it was and modify the final decree.

I

The orientational background facts are that the plaintiff, Dorothy Flippo, formerly Shannon, is the daughter of the late L.D. Shannon who died testate leaving an estate consisting of, among other things, several pieces of real estate located in various counties in this state. The decedent's will was probated and his land was distributed August 4, 1976, to the defendant trustees of two trusts created by the terms of the

will, one of which was called "My Wife's Trust Estate" and the other "My Residuary Trust Estate." The trustees are Barlow Nelson and Yandell Shannon, the plaintiff's mother.

The trusts were each devised a one-half interest in the decedent's real estate. The plaintiff and her sister, Darlene Kay Gelino, a defendant, were made equal beneficiaries of the assets of "My Residuary Trust" with distribution of one-third of the corpus at ages 35, 40 and 45.

The plaintiff's late father, L.D. Shannon, executed his last will in 1963. It was probated and the estate distributed in 1976. Not long thereafter the trustees of the estate trusts conveyed a 40-acre tract located in Section 7, T17N, R10E, Creek County, Oklahoma, to the plaintiff and a 40-acre tract in the same section to her sister, defendant Gelino. The two tracts were separated by an 80-acre tract owned by the trusts.

After acquiring her 40 acres the plaintiff started up a dairy farm business which she and her son operated. Early on the plaintiff received permission from her mother to run her cattle on the adjoining 80 acres for both grazing and watering and has so used the acreage through the years.

On June 13, 1985, the plaintiff filed this action asking that the real property held by the Shannon trusts be partitioned in kind if practical and if not then sold and the proceeds distributed. The trustees answered asking the court to refuse to grant partition relief, or else order the property sold.

Commissioners were appointed January 15, 1986. They issued a partial report March 19, 1986, appraising certain improved real estate situated outside Creek County, and certified it could not be divided in kind without great injury to the parties. The report was not objected to and the property was eventually sold pursuant to a court order and the funds distributed by the court.

On May 24, 1988, the commissioners filed their final report saying they "found that partition of [the remaining real] property can be made among the said parties according to their respective interests as deter-

mined and ordered by [the court] without manifest injury to said parties, and we have accordingly partitioned the said property as follows, to wit:"

"To [the] Trustees of 'my wife's trust' " a 10-acre tract and a 30-acre tract in Cherokee County, a 120-acre tract and a 30-acre tract in Creek County (near Depew, Oklahoma) and an 80-acre tract in Creek County (the Kellyville tract that adjoins the plaintiff's farm);

"To Darlene Kay Gelino" an 80-acre tract and a 40-acre tract in Creek County;

"To [plaintiff] Dorothy Ann Flippo" a 130-acre tract (near Depew, Oklahoma) some 25 or so road miles away from her dairy farm.

The plaintiff filed an objection to the report based on the fact that as a matter of equity she should be allotted the 80 acres which adjoin her dairy farm to the west and on which she has been running her cattle with the permission of her mother for many years; and that it will work an economic hardship on her if the tract is not allotted to her. Both the trustees and Gelino objected to the plaintiff's objection.

The matter was heard June 1, 1988. The plaintiff presented evidence that as a permissive user for many years she had become economically dependent on the continued use of subject 80 acres as a source of both food and pond water for her herd of cattle; that it was not cost efficient to hand feed her 65 head of cattle or tap into the rural water system or truck water in, or run the cattle to the allotted 130 acres some 25 miles away, and that constructing a pond on her present acreage would be quite expensive and impractical. The plaintiff further testified she had been unable to lease nearby or adjoining land and the well located on her property had gone dry some time ago. She offered to agree that the 130 acres awarded her could be allotted to the trustees in exchange for the allocation of the 80 acres next to the plaintiff's farm and the 30-acre tract near Depew—a total of only 110 acres.

The only reason defendant Gelino—who did not occupy the 40 acres she owned adjoining subject 80 acres on the west—could come up with in opposition to the commissioners' strange allocation was that the 80–acre tract was the "most saleable" and she felt it should be left in the trust because in the event her mother wanted to sell it she, Gelino, would offer her 40 at the same time so that a prospective purchaser would be able to buy 120 acres; and that the care of her aging mother was depleting the cash on hand and she would eventually need more cash to supplement her income from oil and gas interests.

Of course the rationale of Gelino overlooked the rather obvious fact that the appraisers had placed fair market values on the various tracts and the allocations were made on the basis of such values. The plaintiff's offer to agree that her 130–acre allotment be exchanged for 110 acres means that the mother would be gaining an additional 20 acres of value.

Moreover, the appraisal report regarding the Kellyville tract contains comments on market data which tend to destroy the validity of Gelino's thinking. It states that most large tracts in the area are being "cut up" into 10–acre tracts if rural water is available. The report further stated that until such time as water taps can be made available the best use for the property is agricultural.

The report regarding the 160–acre Depew tract states that the dominant use of the land is agricultural with some rural homesteads. The tract could be partitioned into 40–acre tracts. The market data comments in the Depew tract report indicate that the current market in the area is slow.

At the conclusion of the testimony the trial court seemed to brush aside the evidence of injury to the plaintiff by the commissioners' recommended allocation and entered an order affirming the report of the commissioners. Regarding the plaintiff's request that she be allotted subject 80–acre tract for the operation of her dairy, the trial court stated:

"I can certainly understand that she would like to have her dairy operation right where it is, but I am not convinced that arrangements could not be worked out elsewhere for this same operation. I think she has got other property to go to, or she would have the option to purchase the very eighty or the very forty that has been discussed here if she sells some of her other property. I don't know of any reason that hasn't been shown to this Court why the trustees would not sell this eighty to her. Anyway, not being convinced that the Commissioners' Report is anything other than fair and equitable, I'm going to deny the objection, enter an Order confirming the Report of the Commissioners and deed or deeds are ordered issued in accordance with the recommendations of the Commissioners."

Thus it is apparent that the trial court reached the conclusion it did partly on the basis of speculation and evidence not in the record. In its "Final Decree" the trial court "decreed that the said report of the commissioners is hereby in all things ratified, confirmed, and approved by the Court," overruled the plaintiff's objection thus denying her the equitable relief she sought and ordered the property divided in kind in accordance with the commissioners' final report.

The plaintiff appeals contending she has been substantially prejudiced by the ruling.

II

The dispositive issue is whether the plaintiff made a showing of being substantially prejudiced by the allocation. We hold she did.

■ First we should review the fundamental law applicable to partition proceedings. They are governed by 12 O.S.1981 and Supp.1989 §§ 1501 through 1517. The right to partition is absolute and the proceeding is of equitable cognizance. *Keel v. Keel*, 475 P.2d 393 (Okl.1970). Partition in kind is favored, and the court for "good and sufficient reasons" may direct the commissioners "to allot particular portions to any one of the parties." 12 O.S.1981 § 1507.

In his bench statement quoted earlier the trial judge said he had "not heard any testimony that would indicate that [the commissioners' allocation] is not a just or equitable partition between the parties." In making this statement his focus must have been on land values because he then emphasized the fact that the "respective values are the same," suggesting that the plaintiff's obvious special need for the 80-acre tract was of little or no equitable significance. Finally, the judge spoke in terms of "substituting" his opinion for that of the commissioners and stated "that's all I would be doing ... substituting my opinion, and there wouldn't be any reason for the appointment of the Commissioners."

We believe the trial court misperceives its judicial responsibility in partition proceedings. The court has the statutory authority, and, indeed, the duty, to direct what the commissioners do. Here the court gave the commissioners no directions. They took it upon themselves to determine how the property was to be divided— whether in kind or by sale—and for that which was to be divided in kind, the commissioners decided to whom it was to be allotted. Thus when the plaintiff made her objection she invoked the judicial power of the court to make an equitable determination of how the tracts should be allotted. 12 O.S.1981 § 1516. It was error for the trial court to abdicate this duty by taking the position that performance of its judicial function would somehow destroy the need for commissioners. The commissioners were appointed to perform certain administrative functions under the direction of the court. Their report was, in substance and effect, findings of fact as to values and a recommendation to the court as to whether the property could be fairly divided in kind or not. Absent an objection by one or more of the parties, the court would ordinarily be expected to accept the commissioners' report and adjudicate the issues in accordance with it. But if there is an objection the court must resolve the issue and render a judgment.

■ In this case we are of the opinion the court did hear testimony that indicated the commissioners' report was not just, equitable, fair or necessary with respect to the allotment to the plaintiff. Indeed, it appears to us that for some undisclosed reason the commissioners went out of their way to avoid allocating subject 80-acre tract to the plaintiff. Under the undisputed evidence the commissioners' allocation of subject property appears to have been rather arbitrary, or at least inequitable.

Contrary to what the trial judge stated, there is no evidence the plaintiff has other suitable property to go to or that it would be cost efficient to move an established dairy operation. She is established on her 40-acre tract and has been for more than ten years. Her mother has let her use the 80-acre tract during that period. There is no evidence that the trustees have offered to sell the 80 acres to the plaintiff as the trial court implied they should, but the comment suggests a recognition that the plaintiff should have the property—a recognition that invokes the principle that equity will do that which should have been done.

The ultimate fact is, therefore, that the plaintiff presented "good and sufficient reasons" for allocating subject 80 acres to her as contemplated by statute. She has shown she has been injured by the commissioners' allocation. And this has not been disputed by anyone.

### III

It is therefore our opinion that the trial court's failure to sustain the plaintiff's objection to the commissioners' recommended allocation and to award the plaintiff the 80 acres adjoining her dairy farm plus the north 30 acres of the Depew tract in lieu of the 130 acres the commissioners allotted to her, was an abuse of discretion which substantially prejudiced the plaintiff.

Hence, the final decree is modified in the following particulars:

Barlow J. Nelson and Yandell D. Shannon, Trustees of "My Wife's Trust" are allotted the NW/4 Section 20, Township

15 North, Range 8 East, less the North 30 acres, Creek County, Oklahoma.

Dorothy Ann Flippo, formerly Shannon, is allotted the North 30 acres of the NW/4, Section 20, Township 15 North, Range 8 East, Creek County, Oklahoma, and the SW/4 NE/4 and NW/4 SE/4, Section 7, Township 17 North, Range 10 East, Creek County, Oklahoma.

As to the remaining allotments, the decree is affirmed.

REIF and STUBBLEFIELD, JJ., concur.